# 23-7326-cv(L)
## 23-7547-cv(XAP)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



KEY INVESTMENT SERVICES LLC,

*Plaintiff-Appellant-Cross-Appellee,*

*v.*

JOSH W. OLIVER,

*Defendant-Appellee-Cross-Appellant.*

*On Appeal from the United States District Court
for the District of Connecticut*

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT-CROSS-APPELLEE

Jeffrey S. Dunlap
Michael J. Charlillo
UB GREENSFELDER LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
216-583-7700

*and*

Andrew S. Kazin
BRONSTER LLP
156 West 56th Street, Suite 703
New York, New York 10019
212-558-9300

*Attorneys for Plaintiff-Appellant-
Cross-Appellee*



## CORPORATE DISCLOSURE STATEMENT

In compliance with Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant and Cross-Appellee Key Investment Services LLC ("KIS") certifies as follows: KIS's parent company is KeyBanc Capital Markets, Inc., which is a subsidiary of KeyCorp. No publicly held company owns 10% or more stock in KIS because KIS is not a publicly-traded company that issues stock.

## STATEMENT REGARDING ORAL ARGUMENT

KIS requests that the Court conduct oral argument, which KIS believes will assist the Court in understanding the legal and factual issues involved in this case.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ vi

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE..................................................................................2

      A.    Prudential Initiated an Inquiry Regarding Oliver's Conduct. .....................................................................................3

      B.    Oliver Abruptly Resigned During KIS's Investigation. .............4

      C.    KIS Timely and Accurately Completed Oliver's Form U5 and the Amendments Thereto. ....................................................4

      D.    Oliver Commenced Arbitration Proceedings.............................7

      E.    KIS Filed an Action to Vacate the Award, and Oliver Cross-Moved to Confirm the Award. ........................................8

SUMMARY OF THE ARGUMENT ........................................................................9

STANDARD OF REVIEW ...................................................................................11

ARGUMENT ........................................................................................................12

I.      The District Court Erred in Confirming the Panel's Award of a
        $100,000 Sanction for a Violation of FINRA Regulatory Notice
        10-39.................................................................................................12

        A.      The Panel Lacked the Authority to Sanction KIS for a
                Violation of FINRA Regulatory Notice 10-39. ........................13

        B.      The Panel Manifestly Disregarded the Law by Awarding
                the $100,000 Sanction *as Damages* to Oliver. ........................16

        C.      The District Court Could Not Rescue the Panel's Legal
                Error by Recharacterizing the $100,000 Sanction as
                Compensatory Damages Under Oliver's Defamation
                Claim. .....................................................................................16

II.     Awarding a $100,000 Sanction for violation of FINRA
        Regulatory Notice 10-39 as Additional "Damages" Violates the
        Legal Proscription Against Double Damages. ....................................21

III.    The Panel Manifestly Disregarded the Law By Awarding
        Attorneys' Fees Despite Finding No Grounds to Award Punitive
        Damages. .............................................................................................23

        A.      The Panel Improperly Awarded Attorneys' Fees Despite
                Finding No Basis to Award Punitive Damages. ........................24

B.    The District Court Improperly Attempted to Correct the Panel's Manifest Disregard of the Law by Inferring Alternative Grounds for a Fee Award for Which There Was No Basis. ..............................................................27

IV.    The Panel Manifestly Disregarded the Law of Defamation Where Oliver Failed to Identify Any False Statement in his Form U5. .........30

V.    The Panel Manifestly Disregarded Established Law Concerning Qualified Privilege in Defamation Cases Because the Panel Made No Finding of Actual Malice. ..................................................34

VI.    The Panel Exceeded Its Authority By Considering Claims That the Claimant Had Withdrawn. .............................................................37

CONCLUSION .......................................................................................40

CERTIFICATE OF COMPLIANCE ......................................................41

CERTIFICATE OF SERVICE ...............................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Prudential Secs., Inc.*,
   160 F.3d 304 (6th Cir. 1998) ...................................................................35

*Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*,
   579 F.2d 691 (2d Cir.1978) ...............................................................13, 39

*Banco de Seguros del Estado v. Mutual Marine Office, Inc.*,
   344 F.3d 255 (2d Cir. 2003) ...................................................................12

*Bear Stearns & Co., Inc. v. Fulco*,
   939 N.Y.S.2d 790 (Sup. Ct. 2008)......................................................29, 30

*Brady v. Calyon Sec. (USA)*,
   406 F. Supp. 2d 307 (S.D.N.Y. 2005) .....................................................14

*Brown v. Lawson*,
   2006-Ohio-5897 (Ohio App. 2006) ..........................................................31

*Chapman Lumber, Inc. v. Tager*,
   288 Conn. 69, 952 A.2d 1 (2008) .......................................................21, 22

*City of Hartford v. Int'l Ass'n of Firefighters, Loc. 760*,
   49 Conn. App. 805, 717 A.2d 258 (1998) ................................................25

*Craig v. Connecticut Dep't of Mental Health Nov. 28, 2017 &*
   *Addiction Servs.*,
   No. 3:16-CV-2100 (JCH), 2017 WL 5892193 (D. Conn. Nov. 28,
   2017) ........................................................................................................31

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) ...............................................................16, 37

*Dawson v. New York Life Ins. Co.*,
   135 F.3d 1158 (7th Cir. 1998) .................................................................35

*Dighello v. Busconi,*
  673 F. Supp. 85 (D. Conn. 1987), *aff'd mem.,* 849 F.2d 1467 (2d
  Cir. 1988) ............................................................................................13, 39

*Drone Consultants, LLC v. Armstrong,*
  2016-Ohio-3222 (Ohio App. 2016) ..................................................34

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
  333 F.3d 383 (2d Cir. 2003) ...................................................*passim*

*Ed Schory & Sons, Inc. v. Francis,*
  75 Ohio St. 3d 433 (1996) ................................................................31

*Fid. & Deposit Co. of Md. v. Bradley,*
  No. CV 940544726, 1997 WL 804898 (Conn. Super. Ct. Dec. 22,
  1997) .................................................................................................25

*Fox v. Lifemark Sec. Corp.,*
  84 F. Supp. 3d 239 (W.D.N.Y. 2015)................................................14

*Fuchs v. Scripps Howard Broad. Co.,*
  2006-Ohio-5349 (Ohio App. 2006) ..................................................31

*Galligan v. Edward D. Jones & Co.,*
  No. 389623, 2000 WL 1785041 (Conn. Super. Ct. Nov. 13, 2000)...................36

*Gambardella v. Apple Health Care, Inc.,*
  291 Conn. 620, 969 A.2d 736 (2009) .................................7, 24, 28, 36

*Gilead Cmty. Servs., Inc. v. Town of Cromwell,*
  432 F. Supp. 3d 46 (D. Conn. 2019)..................................................21

*Gleason v. Smolinski,*
  319 Conn. 394, 125 A.3d 920 (2015) .....................................7, 28, 37

*Grace Fin. Grp., LLC v. Dino,*
  138 A.D.3d 644, 31 N.Y.S.3d 472 (2016) .........................................14

*Gurfein v. Ameritrade, Inc.,*
  312 F. App'x 410 (2d Cir. 2009) .......................................................14

*Hanly v. Riverside Methodist Hosps.,*
  78 Ohio App. 3d 73 (10th Dist. 1991)...............................................35

*Hardy v. Walsh Manning Sec., L.L.C.*,
   341 F.3d 126 (2d Cir. 2003) ..........................................................*passim*

*Jacobs v. Frank*,
   60 Ohio St. 3d 111 (1991) ...............................................................35, 36

*Key Investment Services, LLC v. Oliver*,
   Case No. 3:22-cv-01161, 2023 WL 7006220 (D. Conn. Sept. 8,
   2023) ..................................................................................................3

*Luis v. RBC Cap. Markets, LLC*,
   401 F. Supp. 3d 817 (D. Minn. 2019), *aff'd*, 984 F.3d 575 (8th Cir.
   2020) ................................................................................................14

*Mahon v. Chicago Title Ins. Co.*,
   No. 3:09CV00690 AWT, 2012 WL 3544883 (D. Conn. Aug. 16,
   2012) ................................................................................................24

*PaineWebber, Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ..............................................................29

*Plikus v. Plikus*,
   26 Conn. App. 174, 599 A.2d 392 (1991) .........................................26

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
   497 F.3d 133 (2d Cir. 2007) ..............................................................12

*Roman v. Johnson*,
   48 Conn. App. 498, 710 A.2d 186 (1998) .........................................26

*Skakel v. Grace*,
   5 F. Supp. 3d 199 (D. Conn. 2014)....................................................31

*SSH Co., Ltd. v. Shearson Lehman Bros., Inc.*,
   678 F. Supp. 1055 (S.D.N.Y. 1987) ..................................................14

*Stohlmann v. WJW TV, Inc.*,
   2006-Ohio-6408 (Ohio App. 2006) ...................................................31

*The GMS Group, LLC v. Benderson*,
   326 F.3d 75 (2d Cir. 2003) ................................................................18

*Thompson v. Webb, et al.*,
   136 Ohio App. 3d 79 (Ohio App. 1999).......................................35, 36

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960) .................13, 39

*Vandersluis v. Weil*,
   176 Conn. 353, 407 A.2d 982 (1978) ...........................................7, 28

*Weber v. Ferrellgas, Inc.*,
   2016-Ohio-4738, 68 N.E.3d 207 (Ohio App. 2016)..........................................31

*Wilson v. Harvey*,
   164 Ohio App. 3d 278, 2005-Ohio-5722, 842 N.E.2d 83 (Ohio
   App. 2005) ...............................................................25

## Statutes

9 U.S.C. § 10 ...............................................................1

28 U.S.C. § 1291 .............................................................1

## Other Authorities

FINRA Regulatory Notice 10-39....................................................*passim*

FINRA Rule 8320(a)..............................................................16

FINRA Rule 9211 ...............................................................15

FIRA Rule 13104 ...............................................................15

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant-Cross-Appellee KIS commenced this action in the U.S. District Court for the District of Connecticut seeking to vacate FINRA's arbitration award in favor of Josh Oliver ("the Award") because this case arises under 9 U.S.C. § 10 and jurisdiction was conferred by 9 U.S.C. § 10. Defendant-Appellee-Cross-Appellant Oliver cross-moved to confirm the Award.

On September 8, 2023, the District Court (Judge Victor A Bolden) denied KIS's motion to vacate the Award, granted Oliver's cross-motion and issued a final judgment in favor of Oliver in the amount of $1,104,577.90, which judgment disposed of all claims. This Court has jurisdiction over KIS's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in holding that the arbitration panel did not manifestly disregard the law and exceed it powers by determining that KIS violated FINRA Regulatory Notice 10-39 when Oliver failed to submit this issue for arbitration?

2.      Whether the District Court erred in holding that the arbitration panel did not manifestly disregard the law in awarding Oliver double damages recovery for violating FINRA Regulatory Notice 10-39?

3.      Whether the District Court erred in holding that the arbitration panel did not manifestly disregard the law and exceeded its powers in awarding Oliver attorneys' fees despite denying punitive damages?

4.      Whether the District Court erred in holding that the arbitration panel did not manifestly disregard the law in granting Oliver expungement because KIS's statements on Oliver's Form U5 were true?

5.      Whether the District Court erred in holding that the arbitration panel did not manifestly disregard the law because KIS's statements on Oliver's Form U5 are entitled to qualified privilege that Oliver failed to overcome?

6.      Whether the District Court erred in holding that the arbitration panel did not exceed its powers in deciding Oliver's hostile work environment and retaliatory practices-based claims given that Oliver withdrew those claims?

## STATEMENT OF THE CASE

This case concerns an arbitration action brought by Josh Oliver ("Oliver"), a former financial adviser at KIS, which sought expungement and damages in connection with allegedly defamatory statements by KIS in Oliver's Form U5. KIS completed Oliver's Form U5 following his voluntary resignation while under investigation concerning an allegation by a third party, Prudential Financial, Inc. ("Prudential") that Oliver had attempted to improperly access a customer's annuity. That action resulted in a Financial Industry Regulatory Authority ("FINRA")

Dispute Resolution Services Arbitration Award that was issued on August 16, 2022 in the matter of *Josh W. Oliver v. Key Investment Services LLC*, FINRA Dispute Resolution, Case Number 19-03331 ("Award"), which awarded damages and expungement in favor of Oliver. (A10.) KIS filed an action in the United States District Court of the District of Connecticut to vacate the Award, *Key Investment Services LLC v. Josh W. Oliver*, Case No. 3:22-cv-01161. Oliver cross-moved to confirm the Award. On September 8, 2023, in a final judgment from which both parties now appeal, Judge Victor A. Bolden denied KIS's motion to vacate, granted Oliver's cross-motion to confirm, and entered judgment for Oliver in the amount of $1,104,577.90. (A70.) *Key Investment Services, LLC v. Oliver*, Case No. 3:22-cv-01161, 2023 WL 7006220 (D. Conn. Sept. 8, 2023).[1]

### A. Prudential Initiated an Inquiry Regarding Oliver's Conduct.

On March 25, 2019, Prudential contacted KIS and advised that Prudential was conducting an investigation into Oliver and Jamie Serow ("Serow"), a Licensed Relationship Manager at KeyBank who worked with Oliver. (A294, lines 3-21; A2729.) According to Prudential, it had reason to believe that Oliver and Serow attempted to access and requested a partial surrender of a customer's variable annuity held at Prudential when the customer was not present. (A293, lines 12-21; A311, lines 15-24; A367-68, lines 6-24; A2729; A2749.) The customer service

---

[1] The district court's decision is not yet published.

representative at Prudential denied the partial surrender request because the representative did not believe the customer was on the phone call. (A2744.)

Also on March 25, 2019, upon receiving the inquiry from Prudential, KIS commenced its own investigation into Oliver's and Serow's conduct. (A453, lines 14-21; A2845.)

### B. Oliver Abruptly Resigned During KIS's Investigation.

On March 28, 2019, before KIS could interview Oliver or otherwise discuss with him Prudential's inquiry, Oliver submitted his letter of resignation. (A1664; A2793.)

On April 2, 2019, Prudential sent KIS written questionnaires for Oliver, Serow, and another KIS employee in connection with its ongoing investigation. (A296, lines 9-22; A2731.) KIS advised Prudential that Oliver resigned, and thus, KIS could not obtain responses to Prudential's written questions directed to Oliver. (A379:24 to A380:3.)

### C. KIS Timely and Accurately Completed Oliver's Form U5 and the Amendments Thereto.

On April 26, 2019, KIS submitted Oliver's Form U5 to FINRA, reporting Oliver's termination. (A740, lines 1-4; A2801.) In response to the questions under Section 3 of the Form U5, KIS indicated that the submission was for a full termination of Oliver's registration with KIS, and that, because Oliver resigned, the reason for the termination was "Voluntary." (A2801.)

4

In response to the Disclosure Questions under Section 7, KIS truthfully answered "Yes" to questions 7B and 7F1, which ask:

> 7B.   Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct?

> 7F.   Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of:

> 1.    Violating investment-related statutes, regulations, rules or industry standards of conduct?

(A2803-A2804.)

Because KIS responded in the affirmative to questions 7B and 7F1, KIS was required to complete Disclosure Reporting Pages ("DRP") on which it provided to FINRA additional information regarding Oliver's resignation. (A2805-A2807.)

KIS accurately reported that it began an internal review into Oliver's conduct on March 25, 2019, and that, as of April 26, 2019, its internal review remained pending. (*Id.*) In response to the DRP questions regarding the nature of KIS's pending internal review, and the allegations regarding Oliver's conduct that were asserted prior to his resignation, KIS truthfully and accurately responded that:

> [Registered Representative] under internal review for involvement in alleged attempt to access a customer's account held at third party financial institution. (*Id.*)

5

Because an internal review into Oliver's conduct was pending at the time KIS filed Oliver's Form U5 with FINRA, KIS was required to amend Oliver's Form U5 to report the conclusion of its internal review. (A560, lines 10-16.) Accordingly, on May 28, 2019, KIS filed Oliver's Amended Form U5 with FINRA reporting that it concluded its internal review into Oliver's conduct. (A2816.) KIS provided the following true and accurate information regarding the conclusion of its internal review:

> The [Registered Representative] resigned prior to responding to the third party financial institution's questionnaire and the Firm did not obtain a statement. After completing its internal review the Firm was unable to reach a definitive conclusion concerning the allegations. (A2821.)

In 2021, in response to a subpoena that KIS's counsel served on Prudential during the FINRA Arbitration, Prudential produced its findings and conclusions regarding its own investigation into Oliver's conduct. According to Prudential, it concluded that, based on its own investigation, "Oliver was not a party to the facilitation of the client impersonation." (A1751.)

As a result of receiving Prudential's findings and conclusions, KIS amended Oliver's Form U5 a second time to report that:

> The Firm has been informed by the third party financial institution that, after its own internal investigation, the third party financial institution concluded that the [Registered Representative] was not involved in the alleged attempt to access a customer's account. (A2841.)

### D. Oliver Commenced Arbitration Proceedings.

On November 1, 2019, Oliver commenced arbitration against KIS. (A120.) In his Statement of Claim, Oliver asserted claims for expungement of alleged defamatory statements on his Form U5 and for damages for loss of income/opportunity, a hostile work environment, and retaliation. (A130.) During the arbitration, however, Oliver withdrew his claims for hostile work environment and retaliation. (A279; A797-A798.)

The three-member FINRA arbitration panel issued the Award on August 15, 2022. (A10.) In the Award, the panel found and awarded in favor of Oliver as follows:

> 1. Respondent is liable for and shall pay to Claimant the sum of $623,000.00 in compensatory damages.
>
> 2. Respondent is liable for and shall pay to Claimant the sum of $294,800.00 in attorneys' fees pursuant to *Vandersluis v. Weil*, 176 Conn. 353; *Gleason v. Smolinski*, 319 Conn. 394; and *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 637.
>
> 3. Respondent is liable for and shall pay to Claimant the sum of $100,000.00 in damages for violation of FINRA Regulatory Notice 10-39.
>
> 4. The Panel recommends the expungement of all references to Occurrence Numbers 2029515 and 2029519 from the registration records maintained by the CRD for Josh W. Oliver (CRD Number 4148333). Any "Yes" answers should be changed to "No," as applicable.
>
> The Panel recommends expungement based on the defamatory nature of the information. The above

7

recommendations are made with the understanding that the registration records are not automatically amended. Josh W. Oliver must forward a copy of this Award to FINRA's Credentialing, Registration, Education and Disclosure Department for review.

The Reason for Termination in Section 3 of the Form U5 and the Amended Form U5s filed by Key Investment Services LLC (CRD Number 136300) on April 26, 2019, May 28, 2019, and May 18, 2021 respectively shall remain the same.

5. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied.

(A11-A12.)

### E. KIS Filed an Action to Vacate the Award, and Oliver Cross-Moved to Confirm the Award.

On September 14, 2022, KIS filed an action in the United States District Court of the District of Connecticut to vacate the Award. (A7.) Oliver cross-moved to confirm the Award. (A40.) On September 8, 2023, Judge Victor A. Bolden denied KIS's motion to vacate, granted Oliver's cross-motion to confirm the Award, and entered judgment for Oliver in the amount of $1,104,577.90. (A70.) This appeal followed.

## SUMMARY OF THE ARGUMENT

In confirming the Award, the district court repeatedly attempted to correct the arbitration panel's numerous manifest legal errors and overstepping of its authority by positing its own alternative justifications to arrive at the same result. The district court repeatedly relied on *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003), to support its efforts to infer alternative readings on which it found the panel "could have" based its decision. The district court's reliance on *Duferco* was misplaced, however, because the court failed to respect the limitations that this Court has imposed on the inferences permitted under *Duferco*, particularly those set forth in *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126 (2d Cir. 2003), issued shortly thereafter *Duferco*. As this Court made clear in *Hardy*, and should hold again here, a reviewing court cannot infer alternative justifications where such hypothesized bases contradict the express findings of the Award—which the reviewing court is required to accept—or where they lack a valid legal basis in their own right. *Id.* at 131-32.

In Paragraph 3 of the Award, the panel held that KIS "is liable for and shall pay to Claimant the sum of $100,000 in damages for violation of FINRA Regulatory Notice 10-39." (A11.) The panel had no authority to make such a ruling. It is undisputed that Oliver asserted no claim for violation of FINRA Regulatory Notice 10-39, nor could he have, as there is no private right of action for any violation of a

FINRA rule or regulation. Nor was the panel empowered to sanction KIS for violating FINRA regulations, as such sanctions are the sole province of FINRA disciplinary proceedings, not private arbitrations. Even if the panel could have sanctioned KIS, disciplinary sanctions cannot be ordered paid to private litigants as "damages" in any event.

Faced with these clear and inescapable legal obstacles to justify the Award as written, the district court nevertheless confirmed the Award by recharacterizing the $100,000 regulatory sanction as additional compensatory damages. The district court's attempt to infer an alternative justification for the Award fails, however, because the district court was bound not only by the grounds for liability on which the panel expressly based its Award, but also by the panel's findings that limited Oliver's compensatory damages to the $623,000 set forth in Paragraph 1 of the Award. (A11.)

The panel's award of attorneys' fees was equally misguided, as it purported to award fees pursuant to an application of Connecticut law that only permits attorneys' fees as punitive damages, despite the panel having expressly found no basis to award punitive damages. Here too, the district court's effort to resuscitate this aspect of the Award fails because the alternative justifications the court tried to infer from the Award contradicted the panel's stated basis for liability and, in any event, were themselves legally invalid.

The panel's award of compensatory damages on Oliver's defamation claim blatantly disregarded the established law of defamation for two reasons. First, there can be no colorable claim for defamation when even Oliver could not identify any statement that KIS made on Oliver's Form U5 that was actually false. At most, Oliver merely contended that the Form U5 failed to tell "the whole story" because an allegedly inadequate review by KIS had not affirmatively exonerated him. That is not defamation. Second, the panel could not justify finding KIS liable for defamation where KIS possessed a qualified privilege that could not be overcome without a finding of malice that it is impossible to infer from an Award that had expressly found no basis to award punitive damages.

Finally, the panel exceeded its authority when it continued to consider Oliver's claims for damages arising from an alleged hostile workplace and retaliatory conduct, which Oliver clearly and unmistakably withdrew at the arbitration.

For all these reasons, the arbitration panel manifestly disregarded the law and exceeded its authority, and the district court erred in failing to vacate the Award in its entirety.

## STANDARD OF REVIEW

Issue one concerns both whether the panel manifestly disregarded the law in making its Award and whether the panel exceeded its authority in deciding matters

11

that were not properly before it. Issues two through five on appeal concern whether the panel manifestly disregarded the law in making its Award. Issue six concerns whether the panel exceeded its authority in deciding matters that were not properly before it.

The standard of review as to whether the panel manifestly disregarded the law is a *de novo* review. *See Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 138 (2d Cir. 2007). Whether the arbitrators had the authority to reach these issues is based on the parties' submissions or the arbitration agreement, which is reviewed *de novo*. *See Banco de Seguros del Estado v. Mutual Marine Office, Inc.,* 344 F.3d 255, 262 (2d Cir. 2003).

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN CONFIRMING THE PANEL'S AWARD OF A $100,000 SANCTION FOR A VIOLATION OF FINRA REGULATORY NOTICE 10-39.

The arbitration panel exceeded its authority and manifestly disregarded the law when it sanctioned KIS in an amount of $100,000 "for violation of FINRA Regulatory Notice 10-39" and when it awarded that sanction to Oliver as "damages." The district court then erred when it tried to correct for these legal infirmities in the Award by substituting an alternative justification for the award that ignored the legal grounds expressly cited by the panel and that further overrode the panel's explicit

limitation of compensatory damages to $623,000 by attempting to recharacterize the improper $100,000 sanction as additional compensatory damages.

### A. The Panel Lacked the Authority to Sanction KIS for a Violation of FINRA Regulatory Notice 10-39.

Arbitrators only have authority to determine the claims put to them by the parties. Thus, "if an arbitration panel rules on issues not presented to it by the parties, it has exceeded its authority and the award must be vacated." *Dighello v. Busconi*, 673 F. Supp. 85, 87 (D. Conn. 1987), *aff'd mem.,* 849 F.2d 1467 (2d Cir. 1988) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)); *see also Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir. 1978). Here, the panel exceeded its authority when it imposed a $100,000 sanction on KIS for what it determined was a violation of FINRA Regulatory Notice 10-39 because Oliver submitted no such claim to the panel, nor could he have.

Oliver's Statement of Claim did not include any claim arising under FINRA Regulatory Notice 10-39. (A130.) In its recitation in the Award of the claims presented, the panel likewise acknowledged (by its absence) that there was no claim under FINRA Regulatory Notice 10-39. (*See* A10 (citing claims for expungement of Form U5 based on defamation, loss of income/opportunity, hostile work environment, and retaliation).) Nor could Oliver have properly asserted such a claim, as there is no private right of action for any violation of FINRA Rules or Regulatory

Notices (formerly called Notices to Members). *See, e.g.*, *Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 414 (2d Cir. 2009) *citing Brady v. Calyon Sec. (USA),* 406 F. Supp. 2d 307, 312 (S.D.N.Y. 2005) ("While defendants may be subject to the rules and by-laws of [FINRA], the rules of [FINRA] do not confer a private right of action."); *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) ("FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of FINRA Rule[s]."); *SSH Co., Ltd. v. Shearson Lehman Bros., Inc.,* 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987) ("[T]he [FINRA] rules contain no express provisions for civil liability, and the courts in this circuit have refused to imply a private right of action to enforce these rules."); *Grace Fin. Grp., LLC v. Dino*, 138 A.D.3d 644, 645, 31 N.Y.S.3d 472, 473 (2016) ("To the extent that respondents' statements of claim plead a violation of a FINRA Notice to Members (NTM) and the rules of FINRA (or its predecessor, the National Association of Securities Dealers [NASD]), the law is clear that there is no private cause of action for such claims."); *Luis v. RBC Cap. Markets, LLC*, 401 F. Supp. 3d 817, 832 (D. Minn. 2019), *aff'd*, 984 F.3d 575 (8th Cir. 2020) ("allowing Plaintiffs to enforce FINRA rules and guidance through this breach action "would vitiate Congress's intent not to allow private rights of action" for violations of those rules and guidance, and would accordingly run against basic separation of powers principles.").

Moreover, Oliver's inclusion in his prayer for relief of a catch-all request for "all other damages and remedies the panel sees fit to award" did not somehow authorize the panel to, *sua sponte*, rule on a claim that was not presented to it. But even if it did, the panel still lacked authority to sanction KIS for a violation of FINRA regulations. Such sanctions are the exclusive province of disciplinary actions by FINRA's enforcement department, not arbitrations among private litigants. *See* FINRA Rules 9211 and 13104 (providing authority to the FINRA Department of Enforcement to commence a disciplinary proceeding against a FINRA member or associated person it believes has violated a FINRA rule or regulation, while only authorizing a FINRA arbitrator to refer such potential violations to FINRA for investigation).

Notably, the district court agreed with KIS on this issue, despite going on to confirm this aspect of the Award on other grounds. (*See, infra*, Part I.C.) That is, the district court did not dispute the absence of a private right of action under FINRA Regulatory Notice 10-39, but merely held that, "even in the absence of a private right of action for a violation of FINRA Regulatory Notice 10-39, there is nothing manifestly wrong with an overall award of damages, consistent with Oliver's overall requested damages." (A81.)

**B.      The Panel Manifestly Disregarded the Law by Awarding the $100,000 Sanction *as Damages* to Oliver.**

Not only did the panel exceed its authority in imposing a sanction for a violation of FINRA rules that the panel had no authority to determine, the panel also manifestly disregarded the governing law when it awarded that sanction as damages to be paid to Oliver. An arbitration panel has manifestly disregarded the law when "(1) the arbitrator[s] knew of a governing legal principle yet refused to apply it or ignored it altogether," and (2) that legal principle was "well defined, explicit, and clearly applicable to the case." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 111 (2d Cir. 2006). There is no legal basis that would plausibly support the panel's decision to order that KIS pay this monetary sanction for a rule violation to a private litigant. The FINRA rules are clear and explicit that "all fines and other monetary sanctions shall be paid to the Treasurer of FINRA and shall be used for the general corporate purposes." FINRA Rule 8320(a). Thus, even if the panel had the authority to sanction KIS for a violation of FINRA rules or regulations in the first place— which it did not—the panel ignored the clear mandate of those same rules and regulations that all sanctions are to be paid to FINRA, not to private litigants.

**C.      The District Court Could Not Rescue the Panel's Legal Error by Recharacterizing the $100,000 Sanction as Compensatory Damages Under Oliver's Defamation Claim.**

Despite the panel's clear and manifest errors, the district court nevertheless attempted to resuscitate the $100,000 sanction by arguing that it *could have been*

16

justified as part of an "overall award of damages" on the claims Oliver actually did assert. (A81.) "In other words," the district court reasoned, "because the arbitration panel awarded damages in an amount supported by the evidence"—*i.e.*, consistent with the compensatory damages calculation proffered by Oliver's expert for lost compensation—"the arbitration panel did not manifestly disregard the law." (*Id.*) The district court's attempt to correct for the panel's errors by reclassifying the impermissible monetary sanction as compensatory damages under Oliver's defamation claim is improper. It is inconsistent with established precedent of this Court and should be rejected.

Here and elsewhere in its decision, the district repeated relied on this Court's 2003 decision in *Duferco v. International Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003), for two propositions to support its efforts to identify alternate bases to justify the panel's improper Award. (*See* Award at A.81, A.82, A.83.) First, as this Court held in *Duferco*, a reviewing court "will not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result." 333 F.3d at 390. And, second, "[e]ven where explanation of an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case." *Id.*

These principles have no application where, as here, the alternate justification to be inferred is itself not legally valid or where it contradicts the panel's express

17

findings. Those limitations were recognized in another case decided by this Court shortly after *Duferco*: *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126 (2d Cir. 2003). *Hardy* involved an arbitration award in which an arbitration panel found that a brokerage firm and one of its employees were jointly and severally liable to the claimant for alleged malfeasance with a trading account "based on the principles of respondeat superior." *Id.* at 128. On cross motions to the district court to vacate or confirm the award, the district court recognized that application of the "fellow-servant rule" rendered the employee's liability under a respondeat superior theory legally impossible. *Id.* at 129. Nevertheless, the district court concluded that it was "possible" to read the award's reference to respondeat superior not as a basis for the liability of each respondent but, rather, merely the basis for finding respondents jointly and severally liable, and it confirmed the award on those grounds. *Id.*

On appeal, this Court rejected the trial court's attempt to reinterpret the panel's award. Citing *The GMS Group, LLC v. Benderson*, 326 F.3d 75 (2d Cir. 2003), this Court recognized that confirmation of an award is appropriate where a ground for the decision can be inferred from the facts of the case, especially in the absence of a written opinion. *Hardy*, 341 F.3d at 131. The *Hardy* decision distinguished *The GMS Group*, however, and clarified that such inferences are impermissible when they purport to supply an alternative legal basis for an award

18

where the panel has already supplied one, as the Court found the panel had done, however abbreviatedly, in the *Hardy* award. *Id.* at 132.

The *Hardy* decision went on to distinguish this Court's decision in *Duferco* as well. In *Duferco*, this Court confirmed an award by inferring a plausible reading of the award that resolved an apparent contradiction, which the Court found was "somewhat confusing" but "not irrational or inexplicable." *Duferco*, 333 F.3d at 387, 392. In *Hardy*, by contrast, this Court clarified that, when an award "cross[es] a line from confusion to inexplicability," and no reading of the award can be inferred to resolve a legal contradiction, vacatur is proper. 341 F.3d at 132.

Like the district court's decision in *Hardy*, the district court here crossed a line into error when it attempted to infer a reading of the award that cannot be reconciled with the panel's express findings. While the panel's award was not long, it was clear when it found that Oliver was entitled to an additional $100,000 "in damages for violation of FINRA Regulatory Notice 10-39." (A11.) Just as in *Hardy*, the award was explicit that its award of an additional $100,000 was based on a violation of FINRA regulations, and a reviewing court cannot infer an alternate theory as a means of correcting a legally improper theory on which the panel was explicit in basing its award. To do so is "to supply an alternate theory of liability where the panel has already supplied one." *Hardy*, 341 F.3d at 132.

Equally problematic is the district court's attempt to lump this additional $100,000 in as part of an overall compensatory damages award of $723,000, on the grounds that this was "consistent with Oliver's overall requested damages." (A81.) Here too, the district court impermissibly confirmed the award upon an alternate reading that directly contradicts the panel's express findings. In the award, the panel recognized that Oliver's requests for compensatory damages in the Statement of Claim were based solely on claims of a hostile work environment, retaliation and defamation. (A11.) It then found, after reviewing the evidence presented by both parties on those claims, that Oliver was entitled to $623,000 in compensatory damages. (*Id.*)

That Oliver had sought damages in excess of that figure is immaterial. As *Hardy* instructs, "a reviewing court is bound to accept the facts considered by an arbitrator 'as those facts have been determined by the arbitrator.'" *Hardy*, 341 F.3d at 131 (*quoting Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 213 (2d Cir. 2002). That is, a reviewing court cannot look to the record evidence to support a conclusion that the panel *could have* found an additional $100,000 in damages when the panel, having considered all the evidence, expressly found that compensatory damages were limited to $623,000. To do so would constitute just the sort of reassessment of the evidence in which a reviewing court may not engage. *See id.* at 131 ("But what is Judge Lynch's holding that Skelly was found to be primarily

20

liable? It is an assessment of the evidence. … Such evidence may exist. But since the award makes no mention of it, we will not assess this evidence.").

For these reasons, vacatur of the panel's award of a $100,000 sanction for violations of FINRA Regulatory Notice 10-39 is appropriate, and the district court's decision confirming the award should be reversed.[2]

## II. AWARDING A $100,000 SANCTION FOR VIOLATION OF FINRA REGULATORY NOTICE 10-39 AS ADDITIONAL "DAMAGES" VIOLATES THE LEGAL PROSCRIPTION AGAINST DOUBLE DAMAGES.

"In general, plaintiffs are not entitled to double recovery of compensatory damages for the same injuries." *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 82 (D. Conn. 2019); *see also Chapman Lumber, Inc. v. Tager*, 288 Conn. 69, 111, 952 A.2d 1, 29 (2008) ("The rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury … ." (internal quotations and citations omitted)). Here, as the panel recognized, Oliver's alleged injury was his loss of income due to his claimed inability to work in the securities industry as a result of

---

[2] While it is true that the Court in *Hardy* elected to have the case remanded to the panel to confirm or clarify the bases for its award, no such confirmation is warranted in this case. It is evident that the panel had no legal basis or authority to support an award of $100,000 to be paid as damages to Oliver as a sanction for violating any FINRA regulation. Yet that is precisely what the panel described in its award, and no plausible reading of the award's findings permit a different inference. To remand the case now would only invite *post hoc* revision of the award, which should not be encouraged.

the language KIS reported on his Form U5. (A11.) The panel awarded Oliver $623,000 in compensatory damages to compensate him for that alleged injury. (*Id.*) This leads to two possible scenarios, neither of which is legally proper. The first is that the panel's award of an additional $100,000 in damages to Oliver was a sanction for an alleged violation of FINRA Regulatory Notice 10-39, which, as addressed above, the law does not permit. The second explanation is that the panel permitted Oliver to recover an additional $100,000 for the same injury that the panel had already found resulted in only $623,000 in damages, which amounts to an improper double recovery.

When the district court sought to avoid the legal infirmities in treating the $100,000 as a sanction arising under FINRA Regulatory Notice 10-39, it necessarily subscribed to the second, equally problematic, explanation that resulted in a double recovery for the same injury. Once again, the district court relied on *Duferco* to support its attempt to craft an alternative theory that, it claims, would have yielded the same result. (A82.) Citing *Duferco*, it reasoned that there was no double recovery because the award could be justified as an overall damages award of $723,000 based on the damages calculation Oliver presented. (A82.) Yet the district court also recognized that the evidence Oliver presented was for "lost compensation as a result of the filing of the Form U-5"—that is, precisely the same injury addressed in the panel's compensatory damages award in paragraph 1 of the Award. (A81.) Because

22

the panel expressly found that Oliver was entitled to only $623,000 in compensatory damages for that injury, the reviewing court is bound by that finding and cannot infer some other interpretation of the award that would contradict that finding. *See Hardy*, 341 F.3d at 131 ("[A] reviewing court is bound to accept the facts considered by an arbitrator as those facts have been determined by the arbitrator." (internal quotations omitted)). Thus, any reading of Paragraph 3 of the Award as awarding additional damages for that same injury—damages which are already included elsewhere in the Award—necessarily results in an improper double recovery and further grounds for reversing the district court and vacating the Award.

## III. THE PANEL MANIFESTLY DISREGARDED THE LAW BY AWARDING ATTORNEYS' FEES DESPITE FINDING NO GROUNDS TO AWARD PUNITIVE DAMAGES.

The district court further erred when it confirmed the panel's award of attorneys' fees and rejected KIS's arguments for vacatur in much the same manner as it had confirmed the improper $100,000 sanction. The panel improperly approved Oliver's claim for attorneys' fees based on a claim for punitive damages despite specifically finding in the Award that there was no basis to support an award of punitive damages in the case. (*See* A11-12.) The district court did not dispute this clear legal error, but nevertheless confirmed the fee award—once again relying on *Duferco* to find an alternative ground for the decision that it concluded could be inferred from the facts of the case. (A82.) Once again, however, the district court

misapplied this Court's precedents when, contrary to the directives in *Hardy*, it inferred alternative grounds for the fee award that were directly contradicted by the panel's findings and themselves legally invalid. For these reasons, the district court's decision should be overturned and the award of attorneys' fees vacated.

**A.    The Panel Improperly Awarded Attorneys' Fees Despite Finding No Basis to Award Punitive Damages.**

In its Award, the panel determined that:

> Respondent is liable for and shall pay to Claimant the sum of $294,800.00 in attorneys' fees pursuant to *Vandersluis v. Weil*, 176 Conn. 353; *Gleason v. Smolinski*, 319 Conn. 394; and *Gambardella v. Apple Health Care*, Inc. 291 Conn. 637. (A11.)

However, the panel also determined that:

> Any and all claims for relief not specifically addressed herein, ***including any requests for punitive damages, are denied***. (A12 (emphasis added).)

Because the panel expressly denied Oliver's request for punitive damages, it manifestly disregarded the law by awarding attorneys' fees in clear contravention of the very law in purported to apply.

It is axiomatic that, under the American Rule, parties pay their own attorneys' fees unless attorneys' fees are permitted under a statute or contract, or if attorneys' fees are ordered as part of punitive damages. *See Mahon v. Chicago Title Ins. Co.*, No. 3:09CV00690 AWT, 2012 WL 3544883, at *6 (D. Conn. Aug. 16, 2012) ("The American Rule requires each party to pay its own attorneys' fees absent some

specific statutory or contractual exception."); *City of Hartford v. Int'l Ass'n of Firefighters, Loc. 760*, 49 Conn. App. 805, 816–17, 717 A.2d 258, 265 (1998) ("In Connecticut, an award of attorney's fees is an element of punitive damages."); *Fid. & Deposit Co. of Md. v. Bradley*, No. CV 940544726, 1997 WL 804898, at *5 (Conn. Super. Ct. Dec. 22, 1997) ("Absent statutory or contractual authorization, attorneys' fees are not recoverable. An exception to this general rule, however, is that a court may award attorneys' fees as a component of punitive damages." (internal citations omitted)).[3]

Oliver did not assert claims against KIS for violating any statute or for breaching any contract. Therefore, the panel could only have awarded attorneys' fees as an element of punitive damages. Indeed, at the arbitration, Claimant's counsel acknowledged the sole basis for its fee claim:

> [T]he reason we can ask you for [attorneys' fees], because FINRA always asks at the beginning of a case, what's your statutory basis for, or what's your legal basis for claiming attorneys' fees? In Connecticut, ***punitive damages are limited to attorney fees and costs, which is, so in effect our punitive damages request is for attorney fees and costs***. (A1448, lines 10-16 (emphasis added).)

---

[3] Ohio law is in accord. *See Wilson v. Harvey*, 164 Ohio App. 3d 278, 2005-Ohio-5722, 842 N.E.2d 83, ¶ 41 (Ohio App. 2005) ("[A] civil action cannot be maintained simply for punitive damages and ***without punitive damages, there can be no award of attorney fees***." (emphasis added)).

The arbitration panel did not make any findings that KIS acted maliciously toward Oliver, and the panel specifically denied Oliver's request for punitive damages. Thus, Oliver could not have recovered attorneys' fees, and the arbitration panel manifestly disregarded the law and exceeded its powers by awarding Oliver attorneys' fees after it specifically denied Oliver's request for punitive damages. *See Roman v. Johnson*, 48 Conn. App. 498, 503–04, 710 A.2d 186, 189–90 (1998) ("In the present case, the trial court did not make any findings regarding the defendant['s] wanton, willful or outrageous conduct and did not award punitive damages. ***Because the trial court did not award punitive damages and there is neither contractual nor statutory authorization for the award of attorney's fees, we must vacate that portion of the judgment requiring the defendants to pay the plaintiffs' attorney's fees***." (emphasis added)); *Plikus v. Plikus*, 26 Conn. App. 174, 180, 599 A.2d 392, 395 (1991) (reversing trial court's award of attorneys' fees and holding that "the court improperly awarded attorney's fees … [b]ecause the court lacked statutory or contractual authority to award attorney's fees, ***and because there was no award of punitive damages***." (emphasis added)). For these reasons, the panel's award of attorneys' fees should have been vacated and the district court judgment should be reversed.

**B.** **The District Court Improperly Attempted to Correct the Panel's Manifest Disregard of the Law by Inferring Alternative Grounds for a Fee Award for Which There Was No Basis.**

The district court acknowledged the panel's inability to award attorneys' fees on the basis of a punitive damages claim that the panel elsewhere rejected. Indeed, a "reviewing court is bound to accept the facts considered by an arbitrator as those facts have been determined by the arbitrator." *Hardy*, 341 F.3d at 131 (internal quotation omitted). Instead, the district court once again looked to *Duferco* to support an alternative justification for a fee award. (A82.) Adopting a hypothesis that Oliver had suggested for the first time in his reply in support of his cross-motion to confirm the Award, the district court held: "the panel ***could have*** found it had authority to award attorney's fees on several grounds including but not limited to its reading of Connecticut case law, and/or its belief that the parties acquiesced to the issue based on their claims for relief or their agreement to proceed under FINRA rules." (A82, *quoting* A63.) These alternative explanations, the court reasoned, presented a "barely colorable justification" for the Award. (A83, *quoting Jeffries v. Gegenheimer*, 849 F. App'x 16, 18 (2d Cir. 2021)).

The district court's attempt to rescue a legally improper and unsupported fee award was itself improper for at least two independent reasons. First, as discussed above in Section I, this Court has instructed that an alternative justification cannot be inferred from an Award where it is directly contradicted by the Award itself. *See*

27

*Hardy*, 341 F.3d at 132 ("To infer from the facts that Skelly was also liable under any theory of liability is to supply an alternate theory where the panel has already supplied one."). Just as in *Hardy*, the panel supplied the theory of liability on which it based its award of attorneys' fees, stating that it awarded fees "pursuant to" three Connecticut cases. (A11.) Each of those cases concerned the right to recover fees as punitive damages.[4] As in *Hardy*, because the panel identified the legal theory on which it based its award of fees and was further silent as to any other legal theory (none of which had in fact been put to it), a reviewing court is powerless to infer an alternative justification to support the award. *Hardy*, 341 F.3d at 131 (finding that an inferred alternative ground for liability is untenable where the award identifies a single ground for liability and is silent as to alternate grounds).

Second, none of the belatedly hypothesized alternative grounds provide any better legal footing on which to award fees. As noted, these alternatives, which the trial court adopted as "barely colorable," were first hypothesized by Oliver in his reply. None, however, has any legal merit. As an initial matter, as already discussed,

---

[4] *See Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 622, 969 A.2d 736 (2009) (affirming an award of punitive damages on a defamation claim, where the trial court made a finding of actual malice that was not clearly erroneous); *Gleason v. Smolinski*, 319 Conn. 394, 449, 125 A.3d 920 (2015) (reversing lower court's award of punitive damages on a defamation claim because, among other reasons, "the plaintiff did not establish actual malice under any standard of proof"); *Vandersluis v. Weil*, 176 Conn. 353, 359, 407 A.2d 982 (1978) (confirming the law of Connecticut that punitive damages, "if awarded, [] are restricted to cost of litigation less taxable costs of the action being tried").

there is no colorable argument that the panel based its award of fees on its reading of Connecticut case law, as the cases on which the panel relied made clear that attorneys' fees are awardable as a punitive damages claim, which the panel unmistakably rejected.

The alternative theories that KIS somehow acquiesced or agreed to a right to recover fees or that the FINRA rules provide a right to fees are equally baseless. These theories derive from a single decision by a New York trial court, *Bear Stearns & Co., Inc. v. Fulco*, 939 N.Y.S.2d 790 (Sup. Ct. 2008), which offers no support for these purported alternative theories. That case holds that parties may acquiesce to allowing arbitrators to issue fee awards where both parties include such a request in their pleadings. *Id.* at 795. Here, however, KIS did not include any claim for attorneys' fees in its Statement of Answer; it merely including a prayer for "FINRA forum fees and costs," without any mention of fees. (A192.)  There is likewise no support to be found in *Bear Stearns* for the argument that the parties' arbitration agreement provided a right to obtain a fee award simply by virtue of the parties' agreement to submit any claims to FINRA arbitration. The proposition of law on which the *Bear Stearns* decision rested concerned merely the right to **arbitrate** fee claims and does not support the notion that an agreement encompassing the **arbitrability** of fee claims somehow itself creates a right to fees that does not otherwise exist. *See* 939 N.Y.S.2d at 796; *see also PaineWebber, Inc. v. Bybyk*, 81

F.3d 1193, 1202 (2d Cir. 1996) (finding that an agreement to submit "any and all controversies to arbitration" rendered fee claim subject to mandatory arbitration). Finally, nothing in the FINRA Rules provides FINRA arbitrators the authority to award fees absent a statutory or contractual right, and neither Oliver nor the *Bear Stearns* decision identifies any authority to the contrary.

Because the district court failed to identify any legally proper alternative grounds consistent with the Award, the panel's award of fees must be vacated. *See Hardy*, 341 F.3d at 130 (vacatur appropriate where "no reading of the facts can support the legal conclusion"); *id.* at 131 (recognizing that confirmation is appropriate "if one of the [alternate] theories of recovery proffered by the petitioner could have ***properly*** formed the basis for the arbitration panel's award" (emphasis added)).

## IV. THE PANEL MANIFESTLY DISREGARDED THE LAW OF DEFAMATION WHERE OLIVER FAILED TO IDENTIFY ANY FALSE STATEMENT IN HIS FORM U5.

In order to succeed on his defamation claim, Oliver had to prove that: (1) KIS made a false statement of fact about him; (2) the statement was published to a third party without privilege; (3) the statement was made through fault amounting to at least negligence by KIS; and (4) he sustained damages as a result of the statement.

*Weber v. Ferrellgas, Inc.*, 2016-Ohio-4738, 68 N.E.3d 207, 215 (Ohio App. 2016).[5]

Moreover, it is equally well-settled that "truth is a complete defense to a claim for defamation." *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St. 3d 433, 445 (1996). *See also*, *Brown v. Lawson*, 2006-Ohio-5897, ¶ 22 (Ohio App. 2006); *Fuchs v. Scripps Howard Broad. Co.*, 2006-Ohio-5349, ¶ 48 (Ohio App. 2006); and *Stohlmann v. WJW TV, Inc.*, 2006-Ohio-6408, ¶ 13 (Ohio App. 2006).[6] The panel was undisputedly aware of these basic elements of defamation law from KIS's Statement of Answer and from closing arguments. (A187-A188; A1398-A1403.) Yet the panel disregarded this clear law when it found in Oliver's favor on his defamation claim, granted his request for expungement, and awarded him compensatory damages, despite there being ***no evidence*** that any statement KIS made in Oliver's Form U5 was false.

---

[5] Because KIS is an Ohio Limited Liability Company and is headquartered in Ohio, Ohio law governs the relationship between KIS and Oliver, and Ohio law governed Oliver's claims against KIS in the arbitration. Nonetheless, Connecticut defamation law is in accord with Ohio law. *See Craig v. Connecticut Dep't of Mental Health Nov. 28, 2017 & Addiction Servs.*, No. 3:16-CV-2100 (JCH), 2017 WL 5892193, at *11 (D. Conn. Nov. 28, 2017) ("To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.")

[6] Connecticut law is in accord. *Skakel v. Grace*, 5 F. Supp. 3d 199, 207 (D. Conn. 2014) *citing Goodrich v. Waterbury Republican–Am., Inc.,* 188 Conn. 107, 112, 448 A.2d 1317 (Conn. 1982) ("[T]ruth is an absolute defense to an allegation of defamation.").

KIS's statements on Oliver's Form U5 were simple, factual statements about Oliver's resignation and the disposition of KIS's investigation of alleged misconduct, all of which were undeniably true:

- KIS accurately reported in response to Question 3 that the "Reason for Termination" was "Voluntary." (A2801.)

- KIS accurately reported in response to Question 7B that, at the time of Oliver's resignation, he was under internal review at KIS for violating investment-related statutes, regulations, rules or industry standards of conduct. (A2803.)

- KIS accurately reported in response to Question 7F that Oliver was permitted to voluntarily resign from KIS after allegations had been made that accused Oliver of violating investment-related statutes, regulations, rules or industry standards of conduct. (A2804.)

- KIS accurately reported on the Disclosure Reporting Pages ("DRP") that Oliver was "under internal review for involvement in alleged attempt to access a customer's account held at third party financial institution." (A2805.)

- On May 28, 2019, KIS updated the DRP to accurately report that KIS did not obtain a statement from Oliver during the internal review, and that KIS concluded the review, having determined that it did not reach a definitive conclusion concerning the allegations. (A2821.)

- On May 18, 2021, KIS updated the DRP again to accurately report that KIS had been informed by the third-party institution that had made the allegations that it had concluded, after its own internal investigation, that Oliver was not involved in the alleged attempt to access a customer's account. (A2841.)

None of these statements contained a false statement of fact about Oliver. None even suggested any position concerning the merits of any allegation made against Oliver. Rather, each statement was a true and accurate report concerning the

fact that Oliver voluntarily resigned from KIS, the fact that KIS had opened an internal review prior to Oliver's resignation based on allegations from Prudential, KIS's reason for concluding its internal review, and KIS's subsequent discovery regarding the conclusion of Prudential's review.

KIS is not asking this Court to reassess disputed evidence because Oliver himself did not contend, nor did he present any evidence, that any of these statements were, in and of themselves, false. Oliver's contention was not about the facts of KIS's internal review, but rather the quality of that investigation—*i.e.*, that KIS did not determine during its review that the allegations lacked merit and that KIS did not include a statement in Oliver's Form U5 exonerating him. In his Statement of Claim, Oliver's only comments regarding his Form U5 were to protest his innocence and attest that he had not received any request from KIS to submit a statement as part of KIS's internal review—none of which would refute any statement actually made by KIS on his Form U5. (A121.) Following the hearing, as summarized in counsel's closing argument, Oliver's position remained that KIS's investigation was deficient—that it ultimately determined nothing ("can't reach a conclusion")— which is all that KIS reported on Oliver's Form U5. (A1411.) Thus, Oliver's contention was not that there was anything false on the Form U5, but merely that "sometimes statements that are just true don't tell you the story, and in effect become untrue because they didn't tell you the rest of the story." (A1427.)

33

Whatever merit the arbitration panel may have found in Oliver's allegations regarding the adequacy of KIS's internal review process and its failure to exonerate Oliver—*i.e.*, to "tell you the rest of the story"—that is no basis for a defamation claim. A statement that "is misleading and fails to disclose all relevant facts" is not defamatory if the statement "has some truth in it." *Drone Consultants, LLC v. Armstrong*, 2016-Ohio-3222, ¶ 33 (Ohio App. 2016).

Because there was no colorable justification to call an alleged failure to affirmatively clear Oliver's name on his Form U5 defamation, the arbitration panel's finding to the contrary was a manifest disregard of law. The district court's resort, yet again, to *Duferco* to infer a justifiable ground for the decision from the facts of the case was, yet again, improper because there were *no facts* presented that challenged what KIS actually said—as opposed to what Oliver would have liked KIS to have said. For these reasons, the district court's confirmation of the Award regarding its finding of liability on Oliver's defamation claim, its damages award and expungement order, should be overturned and the Award vacated.

## V. THE PANEL MANIFESTLY DISREGARDED ESTABLISHED LAW CONCERNING QUALIFIED PRIVILEGE IN DEFAMATION CASES BECAUSE THE PANEL MADE NO FINDING OF ACTUAL MALICE.

Ohio recognizes a qualified privilege for:

> [a] communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty, even

> though it contains matter which, without this privilege,
> would be actionable, and although the duty is not a legal
> one, but only a moral or social duty of imperfect
> obligation.

*Jacobs v. Frank*, 60 Ohio St. 3d 111, 113-14 (1991); *see also, Thompson v. Webb, et al.*, 136 Ohio App. 3d 79 (Ohio App. 1999), syllabus; *Hanly v. Riverside Methodist Hosps.*, 78 Ohio App. 3d 73, 81 (10th Dist. 1991). "The concept of a qualified privilege is based upon public policy and the need to protect the publication of a communication made in good faith." *Jacobs*, 60 Ohio St. 3d at 114. Form U5 disclosures are especially deserving of a qualified privilege because they educate and protect the investing public and subsequent employers. *See, e.g., Thompson*, 136 Ohio App. 3d at 84 (emphasizing the importance of a qualified privilege where "society's interest in being protected by the dissemination of information outweighs the loss of reputation to a person defamed").

Numerous cases hold that an employer's statements on a Form U5 that describe the reasons for terminating the employee are subject to a qualified privilege. *See, e.g., Andrews v. Prudential Secs., Inc.*, 160 F.3d 304, 307 (6th Cir. 1998) ("[T]he U-5 forms were protected by a qualified privilege which could be defeated only upon a showing of actual malice"); *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1163-64 (7th Cir. 1998).

A qualified privilege applies as long as the disclosures were not made with actual malice. In *Jacobs, supra*, the Supreme Court of Ohio held that:

35

> When a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.

60 Ohio St. 3d 111, paragraph two of the syllabus (emphasis added); *see also, Thompson*, 136 Ohio App. 3d at 85.[7]

The arbitration panel was fully aware of the law of qualified privilege when it issued its Award, having been so informed in both the Statement of Answer and during closing arguments. (A188-A190; A1403.)

The arbitration panel disregarded that law in its Award, however, because it did not and could not make a finding of malice necessary to overcome the qualified privilege that attached to KIS's disclosures on Oliver's Form U5. The panel elsewhere found in the same Award that there was no basis in the record to support a punitive damages claim. (A12.) Because punitive damages are supported by the same malice requirement needed to overcome the qualified privilege in a defamation

---

[7] Connecticut law is in accord. *See, e.g., Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 969 A.2d 736 (2009) (affirming the qualified privilege in defamation claims concerning employer communications regarding employment decisions, and requiring a showing of actual malice or malice in fact to defeat that privilege); *see also Galligan v. Edward D. Jones & Co.*, No. 389623, 2000 WL 1785041, at *13 (Conn. Super. Ct. Nov. 13, 2000) (noting that Form U5 statements are subject to a qualified privilege).

claim, it follows that the panel made no finding of malice. *Gleason v. Smolinski*, 319 Conn. 394, 432, 125 A.3d 920 (2015) ("To sustain an award of punitive damages, the plaintiff must prove actual malice by clear and convincing evidence …."). Thus, because KIS's qualified privilege was "well defined, explicit, and clearly applicable to the case," the arbitration panel manifestly disregarded the law by finding in favor of Oliver on his defamation claim and granting his request for expungement. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 111 (2d Cir. 2006).

The district court cannot get around this fatal flaw by looking itself to the underlying record evidence to infer some factual basis to support a finding of malice. (A83.) Again, the district court's reliance on *Duferco* to supply a missing justification for an under-explained award is misplaced because, once again, the district court was bound to accept the finding's that the panel *did* make in its Award, and those findings were inconsistent with a finding of malice needed to support KIS's liability on a defamation claim. *See Hardy*, 341 F.3d at 131-32.

## VI. THE PANEL EXCEEDED ITS AUTHORITY BY CONSIDERING CLAIMS THAT THE CLAIMANT HAD WITHDRAWN.

In his Statement of Claim, Oliver asserted claims and sought damages for defamation, loss of income/opportunity, hostile work environment, and retaliation. (A130.) However, Oliver then explicitly withdrew the claims for loss of income due to a hostile work environment and retaliatory practices, and he did not request relief in connection with those withdrawn claims. (A279; A797-A798.) Nevertheless, in

37

the Relief Requested section of the Award, the arbitration panel stated that Oliver

sought damages "based on the loss of income due to the hostile work environment

and retaliatory practices of [KIS]." (A11.) Because the panel considered claims that

were no longer before it, it exceeded its authority, and its Award of damages should

be vacated.

Counsel for Oliver left no question that Oliver was no longer seeking any

damages relating to Oliver's time while employed at KIS. During opening

statements, Oliver's counsel stated that:

> Now, before I close, it's a little hard in our Statement of
> Claim (inaudible) to discern whether we're making a case
> about losses he, he incurred while he was working at Key
> Investment Services. We're not seeking those damages.
> We're not going for those. (A279.)

Such damages would, naturally, include the alleged losses for a hostile work

environment and retaliation.

If that were not enough, KIS sought and obtained further confirmation of

Oliver's withdrawal of these claims from Oliver himself during cross-examination:

> Q.    Okay. And you understand that the Statement of
>       Claim includes a number of allegations relating to
>       mismanagement at Key Investment Services, right?
>
> A.    Yes.
>
> Q.    And you listened to Rick Slavin's opening
>       statement, correct?
>
> A.    Yes.

Q.   And did you hear when he said that you're no longer claiming damages as a result of allegations related to mismanagement at Key Investment Services?

A.   Yes.

Q.   And to be clear, are you still claiming monetary damages as a result of allegations relating to mismanagement at Key Investment Services?

A.   No.

(A797-A798.)

There can be no doubt that Oliver abandoned his claims related to an alleged hostile work environment and retaliatory practices by KIS.[8] Therefore, because the panel is only authorized to consider the claims that are actually put before it, the panel exceeded its powers by considering claims that were not presented to it for adjudication, and the award must be vacated. *See Dighello v. Busconi*, 673 F. Supp. 85, 87 (D. Conn. 1987), *aff'd mem.,* 849 F.2d 1467 (2d Cir. 1988) ("[I]f an arbitration panel rules on issues not presented to it by the parties, it has exceeded its authority and the award must be vacated." (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960))); *see also Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir. 1978).

---

[8] The district court failed entirely to consider Oliver's abandonment of these claims in its decision. Its finding that these claims were before the panel relied solely on the panel's citation to Oliver's original Statement of Claim, with no comment or consideration of Oliver's withdrawal of those claims during the hearing. (A83.)

39

## CONCLUSION

For these reasons, the district court's order confirming the Award and denying KIS's motion to vacate should be overturned, and the Award should be vacated in its entirety. Alternatively, at a minimum, this Court should instruct the district court to remand the matter to the panel for the limited purposes of clarifying the bases for the Award, as set forth herein, and consistent with *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126 (2d Cir. 2003).

Dated: January 18, 2023          Respectfully submitted,

*/s/ Andrew Kazin*
**Andrew Kazin**

*ATTORNEY FOR APPELLANT-CROSS-APPELLEE KEY INVESTMENT SERVICES LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this document conforms to the type-volume limitation of FRAP 32(a)(7)(B)(i), as modified by Second Circuit Rule 32.1(a)(4)(A), because it contains 9,637 words, excluding those portions of the brief that are excluded from length computations pursuant to FRAP 32(f).  This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

*/s/ Andrew Kazin*_____

*Attorney for Appellant-Cross-*
*Appellee Key Investment Services*
*LLC*

## CERTIFICATE OF SERVICE

I certify that, on January 18, 2023, I electronically filed the foregoing Principal Brief of Appellant Key Investment Services LLC with the Clerk of the Court using the CM/ECF system, which will send a true and correct copy of such filing to all counsel of record.

*/s/ Andrew Kazin*

*Attorney for Appellant-Cross-Appellee Key Investment Services LLC*

# SPECIAL APPENDIX

## **Table of Contents**

**Page**

Ruling and Order of the Honorable Victor A. Bolden,
     dated September 8, 2023 ............................................................... SPA1

Judgment of the United States District Court, District of
     Connecticut, entered September 8, 2023 ................................. SPA17

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEY INVESTMENT SERVICES, LLC,

     Plaintiff,

     v.

JOSH W. OLIVER,

     Defendant,

No. 3-22-cv-1161 (VAB)

**RULING AND ORDER ON MOTION TO VACATE ARBITRATION AWARD AND
CROSS-MOTION TO CONFIRM AWARD**

Key Investment Services LLC ("Plaintiff," "Key Investment," or "KIS") brings a motion to vacate the Financial Industry Regulatory Authority ("FINRA") arbitration award issued on August 16, 2022, in the matter of *Josh W. Oliver v. Key Investment Services LLC*, FINRA Dispute Resolution, Case Number 19-03331. Josh W. Oliver ("Defendant" or "Oliver"), in response, brings a cross-motion for confirmation of the arbitration award.

For the following reasons, the motion to vacate the arbitration award is **DENIED**, and the cross-motion for confirmation of the arbitration award is **GRANTED**.

Under FINRA Code Rule 13904(j), interest at an eight (8) percent annual rate shall apply to the arbitral award from the date of the award until today. As the award rendered on August 15, 2022, constituted a total amount of $1,017,800, with the addition of the required interest, judgment will enter for Oliver in the amount of **$1,104,577.90**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

A.     **FACTUAL ALLEGATIONS**

1.     **Background**

Josh Oliver is a former financial advisor at Key Investment. Mem In Support of Mot to Vacate Arbitration Award ("Mot to Vacate") at 1. On March 25, 2019, Prudential Financial, Inc. ("Prudential") allegedly contacted Key Investment to tell them that Prudential had begun an investigation into Oliver and another manager who worked with Oliver. *Id*. at 5. Prudential allegedly told Key Investment that they had reason to believe that Oliver and the other manager had "attempted to access a customer's variable annuity held at Prudential when the customer was not present." *Id.* Prudential believed that on January 20, 2019, Oliver and the other manager had "called Prudential's customer service phone number and requested a partial surrender from a customer's variable annuity. The customer service representative at Prudential allegedly denied the partial surrender request because the representative did not believe the customer was on the phone call, and only the customer can request a partial surrender." *Id.*

Prudential then allegedly asked Key Investment to schedule interviews with Oliver and the other employees under investigation and to question them regarding these allegations. *Id.* Key Investment's Vice President and Compliance Manager allegedly requested written questions that they could send instead, and Key Investment also began its own internal investigation. *Id.* Three days later, on March 28, 2019, before any questions were sent or any interviews conducted, Oliver allegedly resigned, after less than 12 months with Key Investment. *Id.* at 6.

FINRA Regulatory Notice 10-39 reminds member firms such as Key Investment to comply with FINRA Rules when completing and amending a Form U-5. *Id.* at 3. On April 26, 2019, Key Investment allegedly submitted Oliver's Uniform Termination Notice for Securities

## SPA3

Industry Registration Form ("Form U-5") to FINRA. *Id.* at 6. It allegedly listed the reason for

termination as "Voluntary." *Id.* at 7. Form U-5 has, in relevant part, Disclosure Questions that

ask:

> 7B. Currently is, or at termination was, the individual under
> internal review for fraud or wrongful taking of property,
> or violating investment-related statutes, regulations, rules or
> industry standards of conduct?

> 7F. Did the individual voluntarily resign from your firm, or was
> the individual discharged or permitted to resign from your
> firm, after allegations were made that accused the individual
> of:
>> 1. Violating investment-related statutes, regulations,
>> rules or industry standards of conduct?

*Id.* In response to these questions 7B and 7F1, Key Investment allegedly answered "Yes." *Id.*

Because it answered "Yes", Key Investment allegedly was required to complete Disclosure

Reporting Pages, on which it reported the internal review and that the review was still pending.

*Id.* In response to the questions regarding the pending internal review, Key Investment allegedly

stated:

> [Registered Representative] under internal review for involvement
> in alleged attempt to access a customer's account held at third
> party financial institution.

*Id.* at 8. On May 28, 2019, Key Investment allegedly submitted an amended Form U-5 reporting

that the interval review was concluded, and on the form stated:

> The [Registered Representative] resigned prior to responding to the
> third party financial institution's questionnaire and the Firm did
> not obtain a statement. After completing its internal review the
> Firm was unable to reach a definitive conclusion concerning the
> allegations.

*Id.* In 2021, Key Investment counsel allegedly served Prudential a subpoena during the FINRA

Arbitration that Oliver had commenced in 2019, requesting production of Prudential's own

finding and conclusions from their own investigation into Oliver's conduct. *Id.* Prudential's

conclusion, based on its own investigation, allegedly was that "Oliver was not a party to the

facilitation of the client impersonation." *Id.* After receiving this information from Prudential,

Key Investment allegedly submitted another amended Form U-5 for Oliver that stated:

> The Firm has been informed by the third party financial institution
> that, after its own internal investigation, the third party financial
> institution concluded that the [Registered Representative] was not
> involved in the alleged attempt to access a customer's account.

*Id.* at 8–9.

### 2.      The Arbitration

On November 1, 2019, Oliver initiated arbitration against Key Investment. Def Mem of

Law in Opposition to Pltf Mot to Vacate Arbitration Award and in Support of Def Cross-Mot to

Confirm Award, ECF No. 28 ("Cross-Mot to Confirm Award") at 6. Oliver disputed the truth of

the (allegedly) defamatory statements Key Investment made on his Form U-5, which were

available on his public record. *Id.* Oliver requested expungement of the (allegedly) defamatory

statements, compensatory damages, punitive damages, and "[a]ll other damages and remedies the

panel sees fit to award." *Id.* at 7.

The arbitration hearing took place in Bridgeport, Connecticut between July 5 and July 8,

2022, and virtually over Zoom on August 1 and August 2, 2022. *Id.* at 9. The evidence presented

at the arbitration hearing demonstrated that "the statements made by KIS were false and

defamatory, that KIS acted with actual knowledge of their falsity or a reckless disregard of the

truth, and that Oliver suffered substantial damages due to loss of employment opportunities [. . .]

KIS never sought to determine what actually happened through its own investigation, what

Prudential had concluded (until well into discovery in this matter), or even what Josh's

# SPA5

recollection of events would reveal." *Id.* In a unanimous decision, the three member FINRA

arbitration Panel issued the following "AWARD":

> After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Respondent is liable for and shall pay to Claimant the sum of $623,000.00 in compensatory damages.
>
> 2. Respondent is liable for and shall pay to Claimant the sum of $294,800.00 in attorneys' fees pursuant to Vandersluis v. Weil, 176 Conn. 353; Gleason v. Smolinski, 319 Conn. 394; and Gambardella v. Apple Health Care, Inc. 291 Conn. 637.
>
> 3. Respondent is liable for and shall pay to Claimant the sum of $100,000.00 in damages for violation of FINRA Regulatory Notice 10-39.
>
> 4. The Panel recommends the expungement of all references to Occurrence Numbers 2029515 and 2029519 from the registration records maintained by the CRD for Josh W. Oliver (CRD Number 4148333). Any "Yes" answers should be changed to "No," as applicable.
>
> The Panel recommends expungement based on the defamatory nature of the information. The above recommendations are made with the understanding that the registration records are not automatically amended. Josh W. Oliver must forward a copy of this Award to FINRA's Credentialing, Registration, Education and Disclosure Department for review.
>
> The Reason for Termination in Section 3 of the Form U5 and the Amended Form U5s filed by Key Investment Services LLC (CRD Number 136300) on April 26, 2019, May 28, 2019, and May 18, 2021 respectively shall remain the same.
>
> 5. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied.

*Id.* 9–10. The panel also ordered Key Investment to pay all filing and hearing session fees. *Id.* at

10.

5

**SPA6**

### B.      Procedural Background

On September 14, 2022, Key Investment Services LLC ("Key Investment Services")

filed a motion to vacate the arbitration award, ECF No. 1 ("Mot to Vacate"), to vacate the award

rendered on August 16, 2022, in the matter of *Josh W. Oliver v. Key Investment Services LLC*,

FINRA Dispute Resolution, Case Number 19-03331.

On November 7, 2022, Key Investment filed a supplemental memorandum in support of

the motion to vacate arbitration award. ECF No. 13.

On December 19, 2022, Josh W. Oliver ("Oliver" or "Mr. Oliver") filed a cross-motion

for confirmation of arbitration award. ECF No. 27 ("Cross-Mot to Confirm Award").

On January 11, 2023, Key Investment filed a reply memorandum in support of

supplemental memorandum in support of motion to vacate arbitration award. ECF No. 33.

On January 23, 2023, Oliver filed a reply memorandum in support of cross-motion for

confirmation of arbitration award. ECF No. 34.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "provides the exclusive, and

limited, authority for federal court review of an arbitral award." *Arrowood Indem. Co. v.

Trustmark Ins. Co.*, 938 F. Supp. 2d 267, 272 (D. Conn. 2013), *aff'd*, 560 Fed. App'x 75 (2d Cir.

2014) (citing *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).

> The FAA provides a streamlined process for a party seeking a
> judicial decree confirming an award, an order vacating it, or an order
> modifying or correcting it. Normally, confirmation of an arbitration
> award is a summary proceeding that merely makes what is already
> a final arbitration award a judgment of the court, and the court must
> grant the award unless the award is vacated, modified, or corrected.
> But arbitration awards are not self-enforcing. Rather, they must be
> given force and effect by being converted to judicial orders by
> courts.

*R & Q Reinsurance Co. v. Utica Mut. Ins. Co.*, 18 F. Supp. 3d 389, 392 (S.D.N.Y. 2014) (internal quotation marks omitted). Section 10 of the FAA allows a district court to vacate an arbitration award only in narrow circumstances including, in relevant part, "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "[T]he United States court in and for the district wherein [an arbitration] award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a).

"It is well established that courts must grant an arbitration panel's decision great deference." *Duferco v. Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).  "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Id.*; *see also* 9 U.S.C. § 10.

A court may vacate an arbitral award only if the arbitrator demonstrated a "manifest disregard of the law." *See Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451–52 (2d Cir. 2011). "Manifest disregard is a severely limited doctrine that imposes a heavy burden on the party seeking to vacate an arbitral award." *Sotheby's Int'l Realty, Inc. v. Relocation Grp., LLC*, 588 F. App'x 64, 65 (2d Cir. 2015). *See also Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) ("Our cases demonstrate that we have used the manifest disregard of law doctrine to vacate arbitral awards only in the most egregious instances of misapplication of legal principles.").

"A party seeking to vacate an arbitration award on the basis of manifest disregard of the law must satisfy a two-pronged test, proving that: '(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case.'" *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110–11 (2d Cir. 2006) (citing *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 69 (2d Cir.

2003)). *See also Hernandez v. JRK Residential Grp., Inc*., No. 3:18-CV-558 (SRU), 2021 WL

6498198, at *3–4 (D. Conn. June 25, 2021) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462

F.3d 95, 111 (2d Cir. 2006)). ("An arbitrator has manifestly disregarded the law when '(1) the

arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether,' and

(2) that legal principle was 'well defined, explicit, and clearly applicable.'"); *Zurich Am. Ins. Co.

v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (the party moving to vacate must prove

"both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or

ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and

clearly applicable to the case.") (citing *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir.2004)).

## III.   DISCUSSION

### A.      The Issue of Whether to Vacate, or Confirm the Arbitral Award

Manifest disregard of the law is "a doctrine of last resort—its use is limited only to those

exceedingly rare instances where some egregious impropriety on the part of the arbitrators is

apparent." *Sotheby's Int'l Realty, Inc. v. Relocation Grp., LLC*, 588 F. App'x 64, 65 (2d Cir.

2015) (quoting *Duferco*, 333 F.3d at 389). Manifest disregard of the law "clearly means more

than error or misunderstanding with respect to the law." *Id.*; *D.H. Blair & Co., Inc. v. Gottdiener*,

462 F.3d 95, 111 (2d Cir. 2006); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.* Bobker, 808

F.2d 930, 933 (2d Cir. 1986). "A reviewing court may not vacate an arbitral award merely

because it is convinced that the arbitration panel made the wrong call on the law." *Jeffries v.

Gegenheimer*, 849 F. App'x 16, 17–18 (2d Cir. 2021) (quoting *Wallace v. Buttar*, 378 F.3d 182,

190 (2d Cir. 2004)).

"Instead, an arbitration award should be enforced, despite a court's disagreement with it on

the merits, as long as there is a barely colorable justification for the outcome reached." *Id*. at 18

(quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)); *see e.g. Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (agreeing with the District Court's finding that, even though "evidence could have supported a contrary conclusion," that did "not show that the panel majority manifestly disregarded the law"); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 392 (2d Cir. 2003) ("In construing an arbitral award we look only to plausible readings of the award, and not to probable readings of it. Even absent a plausible reading free of error, we would confirm the award if we independently found legal grounds to do so."); *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1217 (2d Cir. 2002) ("even if (as Goldman contends) the arbitrator erred in resolving the conflicting precedent in favor of AIC, the arbitral decision cannot be said to have exhibited a manifest disregard of the law").[1]

Key Investment raises six arguments for vacating the FINRA arbitration award on the ground the arbitration panel exceeded its powers and manifestly disregarded the law.[2]

First, when it awarded Oliver $100,00 in damages, Key Investment argues that the arbitration panel exceeded its powers and manifestly disregarded the law in its finding that Key Investment violated FINRA Regulatory Notice 10-39 because Oliver had not submitted a dispute regarding Key Investment's compliance with Regulatory Notice 10-39 for the panel to decide. Mot to Vacate at 10. It argues that "when an arbitration panel bases its award on a claim that the parties have not brought before the panel and agreed to arbitrate, the arbitration panel has exceeded its powers, and its award must be vacated." *Id.* at 11.

---

[1] Significantly, long ago, the Second Circuit has pointed out "raw numbers demonstrate the rarity with which we have vacated an arbitral award pursuant to the manifest disregard of law doctrine." *Wallace v. Buttar*, 378 F.3d 182, 191 (2d Cir. 2004) (counting "four out of at least 48 cases where we applied the standard" since 1960 and vacated an award based on this doctrine).

[2] In its first three arguments, Key Investment argues that the arbitration panel exceeded its powers and manifestly disregarded the law, while in its last three, it only argues the panel manifestly disregarded the law.

In response, Oliver argues that the arbitration panel did not exceed its powers when it determined that Key Investment violated FINRA Regulatory Notice 10-39 and awarded damages. Cross-Mot to Confirm Award at 18. Oliver preliminarily emphasizes that under 9 U.S.C. § 10(a)(4), a district court does not have authority to question whether the arbitrators' finding was improper. *Id.* Oliver argues that whether Key Investment violated the FINRA Regulatory Notice 10-39 was indeed presented to the arbitrators for resolution as it was "inextricably tied up with the merits" of the expungement and defamation claims. *Id.* at 20. Oliver also argues that Key Investment waived any argument that this was not submitted to the arbitrators. *Id.* at 22. In Oliver's view, Key Investment "never objected to the introduction of the FINRA Regulatory Notice 10-39 into evidence." *Id.* at 22–23.

Second, Key Investment argues that the arbitration panel's award of $100,000 in "Damages" for violating Regulatory Notice 10-39 is an unlawful double recovery because it also awarded Oliver $623,000 in compensatory damages. Mot to Vacate at 13.

In response, Oliver argues that revisiting the arbitrators' award of damages would be improper and that the panel properly relied on the evidence set forth before it. Cross-Mot to Confirm Award at 24, 27.

Third, Key Investment argues that the arbitration panel disregarded the law and exceeded its powers because it denied Oliver punitive damages, but then it still awarded Oliver attorneys' fees. Mot to Vacate at 14. Key Investment argues that the arbitration panel did not have authority to award attorneys' fees because there was no award of punitive damages. *Id.* at 15.

In response, Oliver argues that the panel did not exceed its authority because it was entitled to award attorneys' fees and costs "as a component of common law punitive damages" and the award must therefore be confirmed. Cross-Mot to Confirm Award at 28. Furthermore, even if it

was not included in punitive damages, Oliver asserts that the arbitration panel nevertheless had authority to award attorneys' fees, given the broad language of the arbitration agreement. *Id.* at 30–31.

Fourth, Key Investment argues that finding in favor of Oliver on his defamation claim and granting his expungement request on his Form U-5 disregarded the law because Key Investment's statements on the form were true. Mot to Vacate at 16.

Fifth, Key Investment argues that Oliver did not overcome Key Investment's entitlement to qualified privilege, and an employer's statements on a Form U-5 are entitled to qualified privilege. *Id.* at 22. Key Investment argues that Oliver needed to prove actual malice—which he did not—to overcome qualified privilege. *Id.* at 23.

In response to both the fourth and fifth points, Oliver argues that the arbitration panel's factual findings are not reviewable by a federal court and that even a factually erroneous conclusion is not a "manifest disregard of the law." Cross-Mot to Confirm Award at 32–33. Oliver further argues that even "[i]f the Court were to entertain [Key Investment's] request to inquire into the factual record to determine whether there is a colorable basis to confirm the Award," the arbitration panel had sufficient grounds to find that the statements were defamatory and made with actual malice. *Id* at 33.

Sixth, Key Investment argues that when the arbitration panel considered Oliver's claims related to an alleged 'hostile work environment' and 'retaliatory practices,' it exceeded its powers because Oliver had withdrawn those claims. Mot to Vacate at 26.

In response, Oliver argues that Key Investment's argument "misconstrues the withdrawal that was made on the record" and the Oliver's requested relief included "all other damages and remedies the panel sees fit to award." Cross-Mot to Confirm Award at 37, 38.

The Court agrees with Oliver.

First, the arbitration panel did not manifestly disregard the law by "bas[ing] its award on a claim that the parties have not brought before the panel and agreed to arbitrate"— Key Investment's compliance with FINRA Regulatory Notice 10-39. [3] Oliver did introduce the FINRA Regulatory Notice 10-39 into evidence. *See, e.g.,* ECF 13-3, Vol. II of the Arbitration Proceedings at 143 ("Q: . . . And then interestingly it says, remember what the footnote to 10-39 says, it says that you have to give your conclusions, and your conclusion was you couldn't reach a conclusion, right? A: Correct. Q. Okay. You considered, did you consider that a conclusion within the meaning of 10-39? A: Yes.).

Instead, the issue is whether the arbitration panel exceeded its authority and manifestly disregarded the law in including damages for a failure to comply with FINRA Regulatory Notice 10-39. But even in the absence of a private right of action for a violation of FINRA Regulatory Notice 10-39, there is nothing manifestly wrong with an overall award of damages, consistent with Oliver's overall requested damages. *See* Cross-Mot to Confirm Award at 14 (seeking, based on calculations from Oliver's expert, Dr. Steven Shapiro, in "lost compensation as a result of the filing of the Form U-5 on April 26, 2019 through August 1, 2022 [an amount of] $722, 284."). In other words, because the arbitration panel awarded damages in an amount supported by the evidence, the arbitration panel did not manifestly disregard the law. *See Duferco*, 333 F.3d at 390 ("We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result."); *see also id.* ("Even where explanation of an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."); *cf. Yusuf Ahmed Alghanim & Sons v.*

---

[3] To support its assertion that "Courts do not hesitate to vacate arbitration awards when arbitrators exceed their powers," Key Investment has only cited to opinion by courts that are not in this Circuit. Mot to Vacate at 11.

## SPA13

*Toys "R" Us, Inc.*, 126 F.3d 15, 24 (2d Cir. 1997) ("The fact that Alghanim lost $6.65 million over ten years does not make the arbitrator's award of future lost profits of $46 million 'completely irrational.' Past losses do not necessarily negate any expectation of future profits.")

Second, for similar reasons, the arbitration panel did not provide a double recovery to Oliver. Indeed, as noted above, the so-called "additional" $100,000 constituted part of the overall damages sought by Oliver. *See* Cross-Mot to Confirm Award at 14. As a result, there is no basis for vacating an arbitral award "if a proper application of law would have yielded the same result." *Duferco*, 333 F.3d at 390; *see id.* ("Even where explanation of an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").

This reasoning also applies to Key Investment's third argument, that the arbitration panel manifestly disregarded the law when it awarded attorneys' fees. Again, consistent with Second Circuit caselaw, courts will confirm [an arbitration award] if a justifiable ground for the decision can be inferred from the facts of the case."*Duferco*, 333 F.3d at 390; *see Jeffries v. Gegenheimer*, 849 F. App'x 16, 17–18 (2d Cir. 2021) ("Instead, an arbitration award should be enforced, despite a court's disagreement with it on the merits, as long as there is a barely colorable justification for the outcome reached." *Id*. at 18 (quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).

Here, while Key Investment argues to the contrary, Oliver correctly points out that "the panel could have found it had authority to award attorney's fees on several grounds including but not limited to its reading of Connecticut case law, and/or its belief that the parties acquiesced to the issue based on their claims for relief or their agreement to proceed under FINRA rules." Oliver's Reply Mem., ECF No. 34 at 5; *see also id.* at n.1 (citing various arbitration award

decisions). In short, there is more than a "barely colorable justification for the outcome reached." *Jeffries*, 849 F. App'x at 18 (quoting *Banco de Seguros del Estado*, 344 F.3d at 260).

Key Investment's fourth and fifth arguments—that the arbitration panel manifestly disregarded the law because Key Investment reported the truth and because Key Investment had qualified privilege—also fail. This Court can and must presume that the arbitration panel, by finding a basis for liability on the defamation claim (and awarding relief commensurate with the harm alleged by Oliver to be suffered), rejected Key Investment's arguments (as well as any alleged evidence submitted by it) to the contrary. *See Duferco*, 333 F.3d at 390 ("Even where explanation of an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").

Finally, Key Investment's sixth argument, that the arbitration panel exceeded its powers and manifestly disregard the law when it considered Oliver's claims related to an alleged 'hostile work environment' and 'retaliatory practices, also fails. First of all, these specific claims were before the panel. *See* Arbitral Award at 1 ("In the Statement of Claim, Claimant asserted a claim seeking expungement of Form U5 termination entry based on the defamatory nature of the entry in Claimant's Central Registration Depository ("CRD") records; loss of income/opportunity; hostile work environment; and retaliation."). And, yet again, any relief awarded was fully consistent with the evidence presented to the arbitration panel. *See, e.g.,* Cross-Mot to Confirm Award at 14.

In addition, it is undisputed that in the Statement of Claim, the arbitration panel had the authority to consider not just the enumerated relief but "all other damages and remedies the Panel sees fit to award." Arbitral Award at 2. As a result, there is considerably more than a

"barely colorable justification for the outcome reached." *Jeffries*, 849 F. App'x at 18 (quoting *Banco de Seguros del Estado*, 344 F.3d at 260).

Accordingly, the Court will not vacate the arbitration panel's award, and instead will confirm it.

### B.    The Issue of Interest

FINRA Code Rule 13904(j) states that:

An award shall bear interest from the date of the award:

(1) If not paid within 30 days of receipt;

(2) If the award is the subject of a motion to vacate which is denied; or

(3) As specified by the panel in the award.

Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrators.

As a result, under the express language of FINRA Code Rule 13904(j), because the Court has decided to deny Key Investment's motion to vacate the arbitration panel's award, and instead decided to confirm it, Oliver is entitled to interest "from the date of the award" at Connecticut's legal rate, "the state where the award was rendered." FINRA Code Rule 13904(j); *see Morgan Stanley Smith Barney LLC v. Walker,* 2018 WL 2561062 at *6 (applying FINRA Code Rule 13904(j) to award interest "to the unpaid monetary awards from the date of the award.").

 Under Connecticut law, specifically Conn. Gen. Stat. §37-1, interest accrues at an annual rate of 8 percent "from the date of maturity of a debt." *Sikorsky Financial Credit Union, Inc. v. Butts,* 315 Conn. 433*,* 435 (2015) (quoting Conn. Gen. Stat. §37-1(b)).

# SPA16

Accordingly, Oliver is entitled to an order assessing eight (8) percent interest on the arbitral award of $1,017,800 from the date of the award, August 15, 2022, until today's date, which results in a total award of $1,104,577.90.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Vacate the Arbitration Award is **DENIED**, and the Cross-Motion for Confirmation of the Arbitration Award is **GRANTED**.

Under FINRA Code Rule 13904(j), interest at an eight (8) percent annual rate shall apply to the arbitral award from the date of the award until today. As the award rendered on August 15, 2022, constituted a total amount of $1,017,800, with the addition of the required interest, judgment shall enter for Oliver in the amount of **$1,104,577.90**.

The Clerk of Court is respectfully directed to enter judgment consistent with this Ruling and Order, and then to close this case.


**SO ORDERED** at Bridgeport, Connecticut, this 8th day of September, 2023.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

# SPA17

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEY INVESTMENT SERVICES LLC,

               Plaintiffs                                   Case No. 3:22-cv-1161 VAB

      v.

JOSH W. OLIVER,

               Defendants

JUDGMENT

This matter came on for consideration before the Honorable Victor A. Bolden, United States District Judge, on defendant's cross motion for confirmation of arbitration award order.  The Court reviewed the motion, and on September 8, 2023, the court entered a ruling granting the cross motion for confirmation arbitration award and ordered that this case be closed. Defendant JOSH W. OLIVER is awarded the constituted a total amount of $1,017,800 rendered-on August 15, 2022, with the addition of the required interest for a total amount of **$1,104,577.90** as of September 8, 2023.

It is therefore ORDERED, ADJUDGED and DECREED that judgment is entered and the case is closed.

Dated at Bridgeport, Connecticut, this 8th day of September 2023

                                      Dinah M. Kinney, Clerk

                                      By: /s/ Tatihana Murphy
EOD: 9/8/2023                                    Tatihana Murphy
                                      Courtroom Deputy